IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEAH CASTRO, individually and ) | CIVIL NO. 07-00558 LEK-BMK |
| as PERSONAL REPRESENTATIVE of ) | |
| the ESTATE OF BRIANDALYNNE ) | |
| CASTRO, deceased minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| LEROY MELCHOR, in his ) | |
| individual capacity; WANNA ) | |
| BHALANG, in her individual ) | |
| capacity; TOMI BRADLEY, in ) | |
| her individual capacity; ) | |
| ROBERTA MARKS, in her ) | |
| individual capacity; KAY ) | |
| BAUMAN, M.D., in her ) | |
| individual capacity; KEITH ) | |
| WAKABAYASHI, in his ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER GRANTING IN PART AND DENYING IN PART THE REMAINING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING
THE REMAINING DEFENDANTS' MOTION FOR STAY OF ACTION**

On June 8, 2012, Defendants Leroy Melchor,

Wanna Bhalang, Tomi Bradley, Roberta Marks, and

Keith Wakabayashi, all in their individual capacities

(collectively "the Remaining Defendants") filed their Motion for

Summary Judgment and their Motion for Stay of Action ("Stay

Motion"). [Dkt. nos. 405, 404.] Plaintiff Leah Castro,

individually and as Personal Representative of the Estate of

Briandalynne Castro, deceased minor ("Plaintiff"), filed a

memorandum in opposition to each motion on August 20, 2012.

[Dkt. nos. 415, 414.]  The Remaining Defendants filed a reply in support of each motion on August 27, 2012.  [Dkt. nos. 418, 417.] These matters came on for hearing on September 10, 2012. Appearing on behalf of the Remaining Defendants were Marie Gavigan, Esq., and Henry Kim, Esq.  Also present were Defendants Wakabayashi, Marks, and Bhalang.  Appearing on behalf of Plaintiff was Sue Hansen, Esq.  After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, the Remaining Defendants' Motion for Summary Judgment is HEREBY GRANTED IN PART AND DENIED IN PART, and the Remaining Defendants' Stay Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

Plaintiff originally filed the instant action pursuant to 42 U.S.C. § 1983 on November 8, 2007.  Plaintiff filed her First Amended Complaint on October 27, 2008, and her Second Amended Complaint on April 30, 2009.  [Dkt. nos. 76, 132.]  The Second Amended Complaint alleged claims against the Remaining Defendants, as well as Defendants Amy Yasunaga, Kenneth Zienkiewicz, M.D., and Kay Bauman, M.D., all in their individual capacities (all collectively "Defendants").

The Second Amended Complaint alleges the following claims: a § 1983 claim for the violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment and

her Fourteenth Amendment right to due process; intentional infliction of emotional distress ("IIED"); negligence; and punitive damages.  Plaintiff's claims include, *inter alia*, allegations that Defendants Marks, Zienkiewicz, Bauman, and Wakabayashi: negligently hired, trained, supervised, and retained Defendants Melchor, Bhalang, Bradley, and Yasunaga, who negligently failed to provide Plaintiff with necessary medical and prenatal care; negligently failed to reprimand Defendants Melchor, Bhalang, Bradley, and Yasunaga regarding the denial of medical care to Plaintiff; and negligently managed Oahu Community Correctional Center's ("OCCC") medical services and procedures, including the failure to adequately document Plaintiff's medical complaints.  [Second Amended Complaint at ¶ 42.]

This Court incorporates the summary of the relevant factual background set forth in this Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment ("2010 Summary Judgment Order").  <u>Castro v. Melchor</u>, 760 F. Supp. 2d 970, 974-75 (D. Hawai`i 2010) (footnote omitted).[1]  The 2010 Summary Judgment Order granted summary judgment to Defendants Yasunaga and Zienkiewicz as to all claims against them.  The Court also granted summary judgment to Defendant Bauman as to

---

[1] This citation includes both the 2010 Summary Judgment Order and this Court's Order Granting Defendants' Motion For Stay of Action Pending Appeal, filed January 7, 2011 ("Stay Order").

several claims but denied summary judgment to Defendant Bauman as to other claims.  Defendant Bauman filed a Notice of Appeal on December 14, 2010.  [Dkt. no. 291.]  This Court issued the Stay Order on January 7, 2011.  760 F. Supp. 2d at 1000-05.  The Ninth Circuit later granted the parties' Stipulated Motion to Voluntarily Dismiss Appeal.  [Order, filed 4/9/12 (dkt. no. 395).]  This Court subsequently approved the parties' Stipulation for Partial Dismissal with Prejudice as to All Claims Against Defendant Kay Bauman, M.D.  [Filed 5/16/12 (dkt. no. 399).]

## I.    State Action

While Defendant Bauman's appeal was pending, Plaintiff proceeded to trial before the Circuit Court of the First Circuit, State of Hawai`i ("state court") in Leah Castro, et al. v. Leroy Melchor, et al., Civil No. 08-1-0901-05 KTN ("State Action").  [Defs.' Concise Statement of Facts in Supp. of Their Motion for Summary Judgment, filed 6/8/12 (dkt. no. 406) ("Defs.' CSOF"), Decl. of Marie Manuele Gavigan ("Gavigan Decl."), Exh. E (Findings of Fact & Conclusions of Law & Order ("State Action FOF&COL")) at 1-2.]

The defendants that Plaintiff named in the First Amended Complaint in the State Action ("State Action Complaint") were: Leroy Melchor, Wanna Bhalang, Tomi Bradley, Amy Yasunaga, Roberta Marks, Kenneth Zienkiewicz, M.D., and Keith Wakabayashi, all in their official capacities; the State of Hawaii ("State");

4

and the Hawaii Department of Public Safety ("DPS", all collectively "State Action Defendants").  The State Action Complaint is based on the same factual allegations as the Second Amended Complaint in the instant case.  It alleges negligence and gross negligence against the State Action Defendants ("State Count I"), as well as an IIED and negligent infliction of emotional distress ("NIED") claim against all of the defendants except the State and DPS ("State Count II").  [Gavigan Decl., Exh. B (State Action Complaint).]

State Count I alleges, in pertinent part:

> 17.  Defendants MELCHOR, BHALANG, BRADLEY, and YASUNAGA were negligent and/or grossly negligent for failure to provide Plaintiff CASTRO and her unborn daughter with proper or timely medical care. . . .

> 18.  Defendants ZIENKIEWICZ, WAKABAYASHI and MARKS were negligent for failure to properly train, supervise and/or retain Defendants MELCHOR, BHALANG, BRADLEY, and YASUNAGA. . . .

[Id. at pgs. 5-6 (emphases in original).]

On March 24, 2011, the State Action Defendants filed their Motion for Summary Judgment, or in the Alternative, for a Stay of This Civil Action ("State Action Motion for Summary Judgment").  [Pltf.'s Concise Statement of Facts in Supp. of Mem. in Opp. to Remaining Defs.' Motion for Summary Judgment, Filed June 8, 2012, filed 8/20/12 (dkt. no. 416) ("Pltf.'s CSOF"), Decl. of Sue Vo Hansen ("Hansen Decl."), Exh. 6 (State Action Motion for Summary Judgment).]  On May 13, 2011, the state court

issued an order granting the State Action Motion for Summary Judgment in part and denying it part.  [Gavigan Decl., Exh. D.] The order stated, in pertinent part: "The motion is granted as to all claims against Defendants Yasunaga, Marks, Zienkiewicz and Wakabayashi . . . ."[2]  [Id. at 2.]

In the State Action Motion for Summary Judgment, the State Action Defendants, *inter alia*, sought summary judgment as to Plaintiff's claims for negligent training, supervision, and/or retention.  [Mem. in Supp. of State Action Motion for Summary Judgment at 10-15.]  Specifically as to Defendants Zienkiewicz, Wakabayashi, and Marks, in their official capacities, the State Action Defendants argued that: 1) Plaintiff had not sufficiently pled those claims against Defendants Zienkiewicz, Wakabayashi, and Marks; and 2) even if Plaintiff had properly pled those claims, Defendants Zienkiewicz, Wakabayashi, and Marks were immune from liability because they were "engaged in discretionary functions as supervisors[.]"  [Id. at 13-15.]

The state court held a jury-waived trial from February 27, 2012 through March 8, 2012.  [State Action FOF&COL at 1-2.] The state court found, in pertinent part:

_____

[2] The state court issued an amended order on October 14, 2011, but the amended order did not alter the state court's ruling as to Defendants Yasunaga, Marks, Zienkiewicz and Wakabayashi.  [Decl. of Marie Manuele Gavigan, filed 9/10/12 (dkt. no. 422), Exh. J.]

46.   Defendant State breached the applicable standards of care by (1) failing to provide Plaintiff with adequate and timely prenatal care, including failure to provide Plaintiff with an OBGYN evaluation and ultrasound as ordered by the nurse practitioner and OCCC physician, (2) failing to provide Plaintiff with medical care in response to Plaintiff's repeated vaginal bleeding complaints and requests for medical attention, and (3) failing to properly monitor, observe, and question Plaintiff about her health condition while she was locked up in segregation, pursuant to the clear and unambiguous DPS and OCCC policies and procedures mandating such level of health care for segregated inmates.

47.   Therefore, Defendant State was negligent.

[Id. at pg. 10.]   The state court's references to "State" or "Defendant State" include State Action Defendants Melchor, Bhalang, and Bradley, in their official capacities ("Nurse Defendants"), because the suit against them in their official capacities "is essentially a suit against Defendant State."   [Id. at pg. 10 n.5.]

The state court also concluded, *inter alia*, that "the evidence established that the conduct of Nurse Defendants with respect to Plaintiff's bleeding complaints, was not intentional or reckless, but negligent.   Therefore, as to IIED, the court rules in favor of Nurse Defendants."   [Id. at ¶ 76.]   Ultimately, the state court concluded:

81.   Based on all the facts and circumstances, an award of damages against Defendant State, in the amount of $350,000.00 to Plaintiff individually ($250,000.00 for NIED and $100,000.00 for loss of filial consortium), is

fair and appropriate, for the State's share of
Plaintiff's total damages.

82.   The Estate's claim, under HRS § 663-7,
is the cause of action and recovery that Baby
Castro would have been entitled to at death for
the injuries caused by Defendant State's
negligence.  Ozaki v. Assn of Apt. Owners, 87
Hawai`i 273, 288, 954 P.2d 652, 667 (App. 1998),
aff'd in part and reversed in part on other
grounds, 87 Hawai`i 265, 954 P.2d 644 (1998).  The
Estate's damages include damages for the loss of
enjoyment of life, or for the value of life
itself, measured separately from the economic
productive value that the deceased would have had.
Montalvo v. Lapez, 77 Hawai`i 282, 284 n.2, 884
P.2d 345, 347 n.2 (1994).

83.   The Estate's damages include the value
for the loss of life itself and for all of the
damages that Baby Castro would have been entitled
to had she been alive, such as loss of enjoyment
of life.  The evidence established that the baby
was normal, with no congenital or development
abnormalities.  Despite the incarcerated status of
her mother, Baby Castro's life and her loss of
enjoyment of life, are of the nature and kind of
any other infant.  An award of damages against
Defendant State, in the amount of $250,000.00 to
the Estate of Briandalynne Castro, is fair and
appropriate, for the State's share of the Estate's
total damages.

[Id. at pg. 17.]

On July 31, 2012, the state court entered its judgment

pursuant to the State Action FOF&COL and the order and amended

order granting the State Action Motion for Summary Judgment

("State Action Judgment").  [Hansen Decl., Exh. 1 (State Action

Judgment).]  On August 29, 2012, the State Action Defendants

filed their notice of appeal from the State Action Judgment and

the State Action FOF&COL.  [Pltf.'s Suppl. Exh. in Supp. of Mem.

in Opp. to the Remaining Defs.' Motion for Summary Judgment,
Filed June 8, 2012, filed 8/30/12 (dkt. no. 419), Decl. of Sue Vo
Hansen ("Suppl. Hansen Decl."), Exh. 7 (notice of appeal).]
Plaintiff represents that the deadline to file appeals from the
State Action Judgment was August 31, 2012.  [Mem. in Opp. to Stay
Motion at 4.]

## II.  Motion for Summary Judgment

In the instant Motion for Summary Judgment, the
Remaining Defendants first emphasize that Plaintiff initially
filed the instant action against two OCCC Adult Corrections
Officers ("ACOs") and the wardens of OCCC and the Women's
Community Correctional Center ("WCCC") based upon an incident
which resulted in a "take down" of Plaintiff.  Plaintiff also
named the State and DPS as defendants, but Plaintiff stipulated
to dismiss those entities and other defendants in their official
capacities based upon the State's immunity from suit in federal
court.  According to the Remaining Defendants, Plaintiff did not
raise her theory of the case based upon the failure to treat her
vaginal bleeding complaints until she filed her First Amended
Complaint in October 2008.  [Mem. in Supp. of Motion for Summary
Judgment at 1-2.]

When Plaintiff initially filed the State Action in May
2008, she sued the ACOs who she initially named in the instant
case, the State, and DPS as the defendants, and she based her

claims upon the "take down" incident.  Plaintiff, however, later dismissed her claims against the ACOs and amended her complaint to name Defendants Melchor, Bhalang, Bradley, Yasunaga, Marks, Zienkiewicz, and Wakabayashi, all in their official capacities, as well as the State and DPS, based on the stillbirth of her daughter.  [Id. at 3.]  The Remaining Defendants assert that "[t]he allegations in the Second Amended Complaint in the Federal lawsuit with regard to the claims of negligence and intentional and negligent infliction of emotional distress are the same or substantially similar to the claims in the First Amended Complaint in the State lawsuit."  [Id. at 4.]

     The Remaining Defendants argue that "because all of Plaintiff's claims have been fully litigated and adjudicated in the State lawsuit, the State Defendants are entitled to summary judgment as a matter of law based on the application of res judicata."  [Id. at 9.]  They seek summary judgment in their favor on all claims in the instant case.  [Id. at 10.]

     First, the Remaining Defendants argue that there is an identity of claims in the two actions because all of Plaintiff's claims in the instant case and all of her claims in the State Action arise from the same transactional nucleus of facts – the alleged lack of appropriate medical care, which resulted in the stillbirth of Plaintiff's daughter.  [Id. at 13.]  Second, the Remaining Defendants argue that the parties in the instant case

are identical to the parties in the State Action, except that the State and DPS were also defendants in the State Action.  The Remaining Defendants argue that the individual defendants are in privity with the State and DPS because the individual defendants are closely aligned with those entities and because those entities act through their employees.  The Remaining Defendants acknowledge that Defendant Bauman was not a defendant in the State Action, but they argue that this is irrelevant to the res judicata analysis because, in the instant case, Plaintiff dismissed her claims against Defendant Bauman.  [Id. at 13-14 & n.2.]  Third, as to the requirement of a final judgment on the merits, the Remaining Defendants argue that the summary judgment rulings and the State Action FOF&COL are adjudications of the merits.  The Remaining Defendants argue that, after the entry of judgment in the State Action, there will be a final judgment for res judicata purposes.  [Id. at 14-15.]  They acknowledge that the Motion for Summary Judgment is premature, but they state that they filed it in order to comply with the dispositive motions deadline.  [Id. at 14 n.3.]

Assuming that res judicata applies, the Remaining Defendants argue that the state court's conclusion that the State Action Defendants were negligent precludes § 1983 liability in this case because Eighth Amendment liability requires more than negligence.  [Id. at 15-16.]  The Remaining Defendants also argue

that they are entitled to summary judgment as to Plaintiff's negligence claims in this case because the State Action fully litigated Plaintiff's claims based upon the failure to provide timely and adequate medical treatment and the failure to comply with the segregated inmates policies.  Further, the state court ruled in favor of the State Action Defendants as to Plaintiff's claims based on the allegedly negligent training, supervision, and retention of Defendants Melchor, Bhalang, Bradley, and Yasunaga.  [Id. at 16-17.]  Finally, the Remaining Defendants argue that they are entitled to summary Judgment as to Plaintiff's IIED claim because the state court ruled that the actions of Defendants Melchor, Bhalang, and Bradley in responding to Plaintiff's vaginal bleeding complaints were not intentional or reckless, but merely negligent.  [Id. at 17-18.]

### A.   Plaintiff's Opposition

In her memorandum in opposition to the Motion for Summary Judgment, Plaintiff states that, throughout this action, she has consistently alleged that Defendants were deliberately indifferent when they denied her medical care, resulting in the stillbirth of her daughter.  Plaintiff merely did not know, at the time she filed the action, the identities of the nurses who failed to provide her with medical care or the identities of their supervisors.  Plaintiff learned their identities during discovery and timely amended her complaint.  Plaintiff emphasizes

that, prior to the Defendant Bauman appeal, the trial in the instant case was scheduled to go forward well before the trial in the State Action.  [Mem. in Opp. to Motion for Summary Judgment at 2-4.]

Plaintiff argues that res judicata does not apply to the State Action because there has been no final judgment in light of the State Action Defendants' appeal from the judgment and the State Action FOF&COL, and the judgment will not be final for another three to four years.  [Id. at 10-11.]

In addition, Plaintiff argues that the parties in the instant case and the State Action are not the same and they are not in privity.  Essentially, all of the individual defendants, in their official capacities, in the State Action are the same as the State itself.  In contrast, the defendants in the instant case are sued in their individual capacities.  Plaintiff argues that their status as employees of the State does not establish privity.  There is no evidence that the individual defendants were able to call their own witnesses in the State Action or that the State represented their individual interests.  [Id. at 12-14.]

Plaintiff also argues that there is no identity of claims in the two actions.  The State Action did not include claims for violation of Plaintiff's Eighth Amendment and Fourteenth Amendment rights, nor did it include claims for

punitive damages or attorneys' fees and costs pursuant to 42 U.S.C. § 1983.  Plaintiff asserts that, because she filed the instant case first, she could not have asserted those claims in the State Action.  Further, she had a right to bring those claims in federal court if she chose to do so.  [Id. at 14-15.] Moreover, because those claims were not at issue in the State Action, Plaintiff did not fully litigate her claims in the instant case in the State Action.  The State Action determined only the liability of the State, not the individual defendants. Plaintiff argues that she would be prejudiced if she is not allowed to pursue her remaining claims in the instant case.  [Id. at 16-17.]  She also contends that it would violate her due process right, as well as public policy.  [Id. at 19-20.]

Even if res judicata could apply without a final judgment, nothing in the state court's findings regarding the State's negligence precludes Plaintiff from litigating her civil rights claims in the instant case, which are based on a deliberate indifference standard.  [Id. at 18-19.]

Finally, Plaintiff urges the Court to deny the Summary Judgment Motion based on judicial estoppel.[3]  She argues that the

---

[3] Plaintiff also argues that the Summary Judgment Motion violates Fed. R. Civ. P. 11 because the res judicata argument is frivolous.  [Mem. in Opp. to Motion for Summary Judgment at 22-23.]  The Court, however, will not address this argument because Plaintiff failed to follow the proper procedures for seeking sanctions pursuant to Rule 11.  See Fed. R. Civ. P. 11(c)(2).

Remaining Defendants have taken the inconsistent position of challenging the State Action's judgment in their appeal but at the same time trying to enforce that judgment in the instant case through res judicata.  [Id. at 22.]

**B.    The Remaining Defendants' Reply**

In their reply in support of the Motion for Summary Judgment ("Summary Judgment Reply"), the Remaining Defendants argue that there is no dispute that the instant case and the State Action both arise out of the alleged failure to provide timely and adequate medical care to Plaintiff, which allegedly resulted in the stillbirth of her fetus.  [Summary Judgment Reply at 2-3.]

The Remaining Defendants concede that there is no final judgment in the State Action, but they argue that, "[i]f a stay is not granted and this case is allowed to go to trial, there is the possibility of an inconsistent result, a matter which res judicata is directly intended to address."  [Id. at 5.]

As to the identity of the parties, the Remaining Defendants argue that the same individuals named in the instant case were also named in the State Action.  Even if this Court were to find that the two groups of defendants were not the same, the defendants in the instant case are in privity with the defendants in the State Action because there is a sufficiently close relationship between individual employees in their official

15

capacities and those individuals in their individual capacities.
[Id. at 5-8.]

As to the identity of the claims, the Remaining
Defendants reiterate that the claims in the two actions arise
from the same common nucleus of facts and that Plaintiff could
have dismissed her claims in the instant case and included them
in the State Action.  The Remaining Defendants argue that
Plaintiff seeks a windfall by pursing her claim twice in two
different fora.  [Id. at 9.]  The Remaining Defendants reiterate
that the findings in the State Action preclude Plaintiff's claims
in the instant case.  Allowing her claims to go forward could
result in inconsistent verdicts on Plaintiff's "single claim."
[Id. at 10.]  The Remaining Defendants contend that neither
public policy nor due process allows Plaintiff to split her
claims between two different courts.  [Id. at 10-11.]

The Remaining Defendants argue that judicial estoppel
does not apply because they do not assert inconsistent positions.
They are entitled to appeal the judgment in the State Action and,
in the instant case, they seek a stay until the State Action
becomes final.  At that time, res judicata will apply.  The
Remaining Defendants argue that, because Plaintiff had an
opportunity to litigate her claims in the State Action, this
Court should defer to the state court's judgment when it becomes
final.  Thus, a stay is appropriate.  [Id. at 11-12.]

16

### III. **Stay Motion**

In the Stay Motion, the Remaining Defendants seek a stay of all proceedings in the instant case until the judgment in the Stay Action is final, including the resolution of any appeals. [Stay Motion at 2.] The Remaining Defendants argue that a stay is appropriate because the State Action proceedings are duplicative of the instant case. They emphasize that this Court has the discretion, based on the totality of the issues before both courts, to stay this action pending the outcome of the State Action. The Remaining Defendants argue that a stay is particularly appropriate because the final judgment in the State Action will have a res judicata effect. The Remaining Defendants argue that, if the Court allows the case to go forward, the Remaining Defendants will be prejudiced by having to litigate the same case twice, and there could be inconsistent results, which would waste this Court's and the state court's limited resources. [Mem. in Supp. of Stay Motion at 4-5.] The Remaining Defendants argue that a stay pending the resolution of any appeals in the State Action would be for a reasonable period of time because the appeal would likely end the litigation in the instant case, and "[t]here is no basis for this Court to believe that the appellate courts of Hawaii would cause any unreasonable delay." [Id. at 10-11.]

17

The Remaining Defendants raise the same arguments regarding res judicata that they raise in the Summary Judgment Motion.  [Id. at 5-11.]  Acknowledging that there is no final judgment in the State Action, the Remaining Defendants argue that "it would violate the intent and spirit of this legal precept if a stay were not granted."  [Id. at 7.]

### A.   **Plaintiff's Opposition**

In her memorandum in opposition to the Stay Motion, Plaintiff argues that the two cases are not duplicative, and the State Action did not resolve all of the claims in the instant case.  She emphasizes that she filed the instant case before she filed the State Action.  [Mem. in Opp. to Stay Motion at 5-7.]

Plaintiff reiterates her arguments from the Summary Judgment Opposition that res judicata does not apply.  Plaintiff argues that the Remaining Defendants have repeatedly tried to frustrate the prosecution of her claims by using delay tactics.  [Id. at 8-14.]  Plaintiff does admit that she could have brought her civil rights claims in state court.  [Id. at 11.]  Plaintiff also reiterates her arguments that the Court should deny the Stay Motion based on judicial estoppel, [id. at 14-18,] and that she did not fully litigate all of the claims in the instant case in the State Action [id. at 18-19].

18

B.   **The Remaining Defendants' Reply**

In their reply in support of the Stay Motion ("Stay Reply"), the Remaining Defendants reiterate that the claims and the parties are identical in the instant case and in the State Action.  [Stay Reply at 4-8.]  The Remaining Defendants argue that, because Plaintiff could have brought all of her claims in the instant case in the State Action, res judicata precludes her from pursuing those claims in the instant case.  [Id. at 4-5 (quoting Ellis v. Crockett, 51 Haw. 45, 55, 451 P.2d 814, 822 (1969)).]  The Remaining Defendants also reiterate their arguments that judicial estoppel does not apply under the circumstances of this case and that Plaintiff has already been fully compensated for her claims.  [Id. at 9-10.]

### DISCUSSION

I.   **Judicial Estoppel**

At the outset, this Court will address Plaintiff's argument that this Court should deny both of the Remaining Defendants' motions based on judicial estoppel.  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (citations omitted).  Courts invoke "judicial estoppel not only to prevent a party from gaining an advantage by taking

inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'"   Id. (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)) (alteration in original).

Courts may consider three factors in deciding whether to apply the doctrine of judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position.  Second, . . . whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . .  [T]hird[,] . . . whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (citations and internal quotation marks omitted); accord Hamilton, 270 F.3d at 782-83.

This Court CONCLUDES that judicial estoppel does not apply to the instant motions.  The State Action Defendants' appeal is not inconsistent with the Remaining Defendants' position in the instant motions.  Essentially, the Remaining Defendants argue that this Court should refrain from ruling on any claims in the instant case that would be affected by the

rulings in the appeal in the State Action.  This Court therefore turns to the merits of the instant motions.

## II.  <u>Summary Judgment Based on Res Judicata</u>

This Court must look to Hawai`i law to determine whether the judgment in the State Action has preclusive effect. See <u>Bumatay v. Fin. Factors, Ltd.</u>, Civil No. 10-00375 JMS/LEK, 2010 WL 3724231, at *4 (D. Hawai`i Sept. 16, 2010) (citing <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.")).  Hawai`i state courts use the term "claim preclusion" instead of res judicata.  <u>Id.</u> at *4 n.3 (citing <u>Bremer v. Weeks</u>, 104 Haw. 43, 53, 85 P.3d 150, 160 (2004)).

> Under Hawaii law, claim preclusion prevents a party from relitigating "not only . . . issues which were actually litigated in [a prior] action, but also . . . all grounds of claim and defense which might have been properly litigated in the [prior] action."  <u>See Aganos v. GMAC Residential Funding Corp.</u>, 2008 WL 4657828, at *4 (D. Haw. Oct. 22, 2008) (quoting <u>Bremer v. Weeks</u>, 104 Haw. 43, 53, 85 P.3d 150, 160 (2004)). . . .

<u>Id.</u> at *4 (alterations in <u>Bumatay</u>).

The party asserting res judicata/claim preclusion has "'the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in

the original suit is identical with the one presented in the action in question.'" Id. at *5 (quoting Bremer, 104 Haw. at 54, 85 P.3d at 161).

"'[A] judgment is final where the time to appeal has expired without an appeal being taken.'" Id. (alteration in Bumatay) (some citations omitted) (quoting Littleton v. State, 6 Haw. App. 70, 75, 708 P.2d 829, 833 (1985)).  Thus, the judgment in the State Action is not final as to the rulings in the State Action FOF&COL because of the State Action Defendants' pending appeal.[4]  Insofar as all of the three factors identified in Bumatay and Bremer must be present for res judicata/claim preclusion to apply, the lack of finality as to all of the issues subject to the State Action Defendants' appeal means that res

_____

[4] The Court notes that the state court ruled in favor of Defendants Melchor, Bhalang, and Bradley, in their official capacities, as to the IIED claim based on their response to Plaintiff's bleeding complaints.  Plaintiff did not appeal from the judgment in favor of Defendants Melchor, Bhalang, and Bradley, in their official capacities, as to the IIED claim.  The notice of appeal in the State Action states that Defendants Melchor, Bhalang, and Bradley, in their official capacities, the State, and DPS appeal from "the Judgment Pursuant to Findings of Fact, Conclusions of Law and Order filed herein on July 31, 2012 . . . , and the Findings of Fact and Conclusions of Law and Order filed on May 14, 2012 . . . ."  [Suppl. Hansen Decl., Exh. 7 at 2.]  Based on the record before this Court, it is not clear whether the appeal contests either the state court's ruling as to the IIED claim against Defendants Melchor, Bhalang, and Bradley, in their official capacities, or the factual findings that the state court based that ruling upon.  Thus, depending upon the specific issues that the appellants raise in the State Action appeal, the judgment as to the IIED claim against Defendants Melchor, Bhalang, and Bradley, in their official capacities, may be final even prior to the resolution of the appeal.

22

judicata/claim preclusion does not apply to the State Action Judgment, to the extent that the state court entered it pursuant to the State Action FOF&COL.

The state court, however, also entered the State Action Judgment pursuant to the order, and amended order, granting in part and denying in part the State Action Motion for Summary Judgment. The state court, *inter alia*, granted summary judgment in favor of Defendants Marks and Wakabayashi as to all claims against them. [Gavigan Decl., Exh. D at 2.] This includes the portion of State Count I alleging that Defendants Marks and Wakabayashi, in their official capacities, were negligent for failing to properly train, supervise, and/or retain Defendants Melchor, Bhalang, Bradley, and Yasunaga. [State Action Complaint at ¶ 18.] The time for Plaintiff to appeal from this portion of the judgment has expired, and Plaintiff did not file a notice of appeal. This Court therefore FINDS that, to the extent that the state court entered judgment in favor of Defendants Marks and Wakabayashi, in their official capacities, as to the negligent training, supervision, and/or retention claim, the State Action Judgment is final for purposes of res judicata/claim preclusion.

In the instant case, Count III in the Second Amended Complaint alleges, *inter alia*, that Defendants Marks and Wakabayashi were negligent for "training, supervision, and retention of Defendants MELCHOR, BHALANG, BRADLEY and YASUNAGA,

who denied, delayed and/or failed to provide necessary medical

and prenatal care to Plaintiff CASTRO and her daughter,

BRIANDALYNNE CASTRO[.]" [Second Amended Complaint at ¶ 42(a)

(emphases in original).]  Count III also alleges that, by reason

of the negligent training, supervising, and retention, Defendants

Marks and Wakabayashi "negligently inflicted severe emotional

distress on Plaintiff CASTRO." [Id. at ¶ 45.]  This Court FINDS

that these portions of Plaintiff's negligence claim against

Defendants Marks and Wakabayashi, in their individual capacities,

are identical to Plaintiff's negligent training, supervision, and

retention claim and NIED claim in the State Action against

Defendants Marks and Wakabayashi, in their official capacities.

Further, the state court decided those claims on the merits in

the State Action.

     As to the final factor identified in Bumatay and

Bremer, Plaintiff argues that the individual defendants, in their

official capacities, in the State Action are not the same parties

as the individual defendants, in their individual capacities, in

the instant case because a suit against a state official in his

official capacity is a suit against the state itself.  See Will

v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("a suit

against a state official in his or her official capacity is not a

suit against the official but rather is a suit against the

official's office" (citation omitted)), limited on other grounds

by Hafer v. Melo, 502 U.S. 21, 22-23 (1991).  Even if that rule

precludes a finding that the parties are identical, this Court

would still find that the parties are in privity.

> Under Hawai`i law, the "concept of privity has
> moved from the conventional and narrowly defined
> meaning of `mutual or successive relationship[s]
> to the same rights of property' to `merely a word
> used to say that the relationship between one who
> is a party of record and another is close enough
> to include that other within res adjudicata.'"

Napala v. Valley Isle Loan LLC, Civ. No. 10-00410 ACK-KSC, 2010

WL 4642025, at *6 (D. Hawai`i Nov. 1, 2010) (alteration in

Napala) (quoting Spinney v. Greenwich Capital Fin. Prods., Inc.,

No. 05-00747 ACK-KSC, 2006 WL 1207400, at *7 (D. Hawai`i May 3,

2006) (citing In re Dowsett Trust, 7 Haw. App. 640, 646, 791 P.2d

398, 402 (Haw. App. 1990))).  In the present case, the

relationship between Defendants Marks and Wakabayashi, in their

official capacities, and Defendants Marks and Wakabayashi, in

their individual capacities, is close enough to find that res

judicata/claim preclusion applies.

The Hawai`i Supreme Court has also recognized, in the

context of the privity necessary for issue preclusion:

> In addressing privity, this court has previously
> stated that "[p]reclusion is fair in circumstances
> where the nonparty and party had the same
> practical opportunity to control the course of the
> proceedings."  Bush v. Watson, 81 Hawai`i 474,
> 480, 918 P.2d 1130, 1136 (1996) (citation
> omitted).  "Preclusion may also be appropriate
> where the party in the previous action was acting
> in a representative capacity for the current
> party.  However, several important rules limit the

extent of preclusion by representation.  The most
obvious rule is that the representative must have
been appointed by a valid procedure." Id. at 481,
918 P.2d at 1137 (citation, brackets and quotation
marks omitted).

Lingle v. Haw. Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO, 107

Hawai`i 178, 186-87, 111 P.3d 587, 595-96 (2005) (alteration in

Lingle).  Clearly, in the State Action, Defendants Marks and

Wakabayashi, in their official capacities, also represented the

interests of Defendants Marks and Wakabayashi, in their

individual capacities, particularly where all are represented by

the Attorney General's office and where the same deputy attorney

general, Ms. Gavigan, is the primary defense counsel in both

cases.  This Court therefore FINDS that Defendants Marks and

Wakabayashi, in their official capacities, are the same parties

as or are in privity with Defendants Marks and Wakabayashi, in

their individual capacities.

Having found that all of the factors identified in

Bumatay and Bremer are present, this Court CONCLUDES that res

judicata/claim preclusion applies to the state court's ruling in

favor of Defendants Marks and Wakabayashi, in their official

capacities, as to the negligent training, supervision, and

retention claim and as to the NIED claim based on training,

supervision, and retention against them in the State Action.

Thus, as to the negligent training, supervision, and retention

claim, and as to the NIED claim based on training, supervision,

and retention, in the instant case against Defendants Marks and Wakabayashi, in their individual capacities, the Court CONCLUDES that there are no genuine disputes of material fact and Defendants Marks and Wakabayashi are entitled to judgment as a matter of law as to those claims. See Fed. R. Civ. P. 56(a). Similarly, insofar as Plaintiff cannot establish that Defendants Marks and Wakabayashi, in their individual capacities, negligently trained, supervised, and retained Defendants Melchor, Bhalang, Bradley, and Yasunaga, Plaintiff cannot establish that Defendants Marks's and Wakabayashi's training, supervision, and retention of Defendants Melchor, Bhalang, Bradley, and Yasunaga was either deliberately indifferent, as required for the § 1983 claim, or intentional, as required for the IIED claim. See Campbell v. Wash. Dep't of Soc. & Health Servs., 671 F.3d 837, 846 (9th Cir. 2011) ("Deliberate indifference is a higher standard than gross negligence because it requires a culpable mental state, meaning that [t]he state actor must recognize[] [an] unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." (alterations in Campbell) (citations and internal quotation marks omitted)).

The Court therefore GRANTS the Remaining Defendants' Motion for Summary Judgment as to the negligent training, supervision, and retention claim, and as to the NIED claim based

27

on training, supervision, and retention, against Defendants Marks and Wakabayashi, in their individual capacities.  The Court also GRANTS the Motion for Summary Judgment as to the portions of the § 1983 claim and the IIED claim based on Defendants Marks's and Wakabayashi's training, supervision, and retention of Defendants Melchor, Bhalang, Bradley, and Yasunaga.  The Court DENIES the Remaining Defendants' Motion for Summary Judgment in all other respects.  The denial is WITHOUT PREJUDICE to the refiling, by either the Remaining Defendants or Plaintiff, of a motion for summary judgment based on res judicata/claim preclusion after there is a final judgment as to the claims at issue in the appeal in the State Action.

     The Court notes that, in the instant case, Plaintiff's negligence claim against Defendants Marks and Wakabayashi, in their individual capacities, included allegations based on: negligent failure to hire Defendants Melchor, Bhalang, and Bradley and negligent failure to reprimand them for their denial of medical care to Plaintiff; [Second Amended Complaint at ¶ 42(a), (b);] "negligent management of OCCC's medical services and procedures[;[5]]" [id. at ¶ 42(c);] and NIED as a result of those actions and omissions [id. at ¶ 45].  Plaintiff's negligence claim in State Count I did not include these

---

[5] The negligent management claim would include the decision not to enforce the policies and procedures regarding the health evaluation of female inmates in segregation.

allegations.[6]  Thus, the State Action Judgment in favor of

Defendants Marks and Wakabayashi, in their official capacities,

does not have a res judicata effect as to those portions of

Plaintiff's negligence claim in the instant case.  Those portions

of the negligence claim against Defendants Marks and Wakabayashi,

in their individual capacities, remain.  Similarly, all other

portions of the § 1983 claim, the IIED claim, and the derivative

claim for punitive damages against Defendants Marks and

Wakabayashi, in their individual capacities, also remain.

## III. <u>Stay Motion</u>

The Remaining Defendants urge the Court to stay the

instant case pending the resolution of any appeals in the State

Action because of the res judicata effect that the State Action

Judgment will have when it becomes final.  This district court

has recognized that:

> "[T]he power to stay proceedings is
> incidental to the power inherent in every court to
> control the disposition of the causes on its
> docket with economy of time and effort for itself,

_____

[6] The Court notes that the state court did make factual
findings regarding the decision not to enforce the policies and
procedures regarding the health evaluation of female inmates in
segregation.  [State Action FOF&COL at ¶¶ 12-17, 46.]  These
findings, however, appear to be background for Plaintiff's
negligence claim in State Count I based on the failure to provide
proper or timely medical care.  In contrast with the Second
Amended Complaint in the instant case, the State Action Complaint
does not expressly allege a negligence claim based on the failure
to enforce the procedures regarding the health evaluation of
inmates in segregation.  <u>Compare</u> Second Amended Complaint at
¶¶ 33, 42(c), <u>with</u> State Action Complaint at ¶¶ 15-22.

for counsel, and for litigants." <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936).  <u>See</u> <u>Leyva v. Certified Grocers of Cal., Ltd.</u>, 593 F.2d 857, 864 (9th Cir. 1979) ("[T]he court may order a stay of [an] action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it."). . . .

<u>Illinois Nat'l Ins. Co. v. Nordic PCL Constr., Inc.</u>, Civil No. 11-00515 SOM/KSC, 2012 WL 1492399, at *20 (D. Hawai`i Apr. 26, 2012) (some alterations in <u>Nordic PCL</u>).  Further, this district court has exercised its inherent power to stay an action pending the resolution of state appellate proceedings.  <u>See, e.g.</u>, <u>Tejada v. Deutsche Bank Nat'l Trust Co.</u>, Civil No. 10-00136 SOM/KSC, 2011 WL 3240276, at *4 (D. Hawai`i July 27, 2011) ("When an appeal has been taken, the Hawaii Supreme Court has noted that it is proper to stay a subsequent suit regarding the subject matter of the first suit pending that appeal." (citing <u>Solarana v. Indus. Elecs., Inc.</u>, 50 Haw. 22, 30, 428 P.2d 411, 417 (1967))).

In <u>Tejada</u>, the district court noted that it had "no reason to think that the Hawaii appellate courts will take an unreasonable amount of time to decide the Tejadas' appeal.  To the contrary, the court expects that the stay in this case will be of a fairly short duration." <u>Id.</u> (citing <u>Dependable Highway Express, Inc. v. Navigators Ins. Co.</u>, 489 F.3d 1059, 1067 (9th Cir. 2007) (noting that stays should not be indefinite and that they should not be granted unless is appears that the other proceedings will be concluded within a reasonable time)).

Similarly, in the instant case, this Court must also assume that the Hawai`i appellate courts will decide the State Action Defendants' appeal within a reasonable amount of time.

In deciding whether to grant the stay, this Court is guided by the principles of the abstention doctrine based on Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941). This district court has described the Pullman abstention doctrine as follows:

> "The Pullman abstention doctrine allows a federal court to postpone the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'" VH Prop. [Corp. v. City of Rancho Palos Verdes], 622 F. Supp. [2d 958,] 962 [(C.D. Cal. 2009)] (quoting Pearl Inv. Co. v. City and Cnty. of San Francisco, 774 F.2d 1460, 1462 (9th Cir. 1985), and C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir. 1983)). Pullman abstention is an "equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions." San Remo Hotel v. City and Cnty. of San Francisco, 145 F.3d 1095, 1104 (9th Cir. 1998). It is also a discretionary doctrine, which flows from the court's equity powers. Potrero Hills Landfill, Inc. v. Cnty. of Solano, 657 F.3d 876, 888 (9th Cir. 2011) (citing Baggett v. Bullitt, 377 U.S. 360, 375 (1964), and Smelt v. Cnty. of Orange, 447 F.3d 673, 678 (9th Cir. 2006).
>
> Pullman abstention is warranted if three conditions are satisfied: "(1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue

of state law is unclear." <u>Potrero Hills Landfill</u>, 657 F.3d at 888 (quoting <u>Spoklie v. Montana</u>, 411 F.3d 1051, 1055 (9th Cir. 2005)). . . .

<u>Bridge Aina Le`a, LLC v. Haw. Land Use Comm'n</u>, Civil No. 11-00414 SOM-BMK, 2012 WL 1109046, at *3 (D. Hawai`i Mar. 30, 2012) (some alterations in <u>Bridge Aina Le`a</u>).

In the instant case, Plaintiff's substantive claims include both federal constitutional law claims pursuant to § 1983 and state law claims - negligence and IIED.  The State Action did not include any civil rights claims, but it did include some of the same negligence (including NIED) claims and IIED claims at issue in the instant case.  Except for the claims discussed *supra*, those claims are still at issue in the appeal by the State Action Defendants.  In particular, both the State Action and the instant case present negligence claims (including NIED) and IIED claims against Defendants Melchor, Bhalang, and Bradley based upon their responses to Plaintiff's vaginal bleeding complaints. If the Court allowed Plaintiff to proceed to trial in the instant case during the pendency of the appeal in the State Action, the jury could return a verdict that is inconsistent with the state court's rulings on those claims.  Arguably, only the United States Supreme Court would be able to hear appeals from both cases and resolve the conflict.  This would not serve the interests of justice, particularly because, once the state court's judgment on those claims is final, the judgment would

have a res judicata/collateral estoppel effect in the instant case.

This Court could stay the claims in the instant case which are identical to the claims at issue in the State Action appeal and proceed to trial on the claims in the instant case which Plaintiff did not allege in the State Action, but that would not be an effective use of the Court's or the parties' time and resources. Further, a definitive ruling on the state law claims in the State Action appeal will narrow the issues in the claims which are distinct from the claims in the State Action. For example, if the Intermediate Court of Appeals ("ICA") reverses the state court's ruling that the responses to Plaintiff's vaginal bleeding complaints were negligent and there is ultimately a final judgment in favor of the State Action Defendants on the negligence claim, this would preclude Plaintiff from recovering on her § 1983 claim against Defendants Melchor, Bhalang, and Bradley, in their individual capacities, based on the same conduct because deliberate indifference requires more than negligence. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect." (citation omitted)). Even if the ICA affirms all of the state court's

findings and conclusions, it would still narrow the issues in the

§ 1983 claim.  As stated in this Court's 2010 Summary Judgment

Order, the Ninth Circuit has

> "long analyzed claims that correction facility
> officials violated pretrial detainees'
> constitutional rights by failing to address their
> medical needs (including suicide prevention) under
> a 'deliberate indifference' standard."  [Clouthier
> v. Cnty. of Contra Costa, 590 F.3d 1232,] 1241
> [(9th Cir. 2010)].  A prison official cannot be
> liable for deliberate indifference unless he or
> she "knows of and disregards an excessive risk to
> inmate health or safety; the official must both be
> aware of facts from which the inference could be
> drawn that a substantial risk of serious harm
> exists, and he must also draw the inference."
> Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct.
> 1970, 128 L. Ed. 2d 811 (1994).  In other words, a
> plaintiff must show that the official was "(a)
> *subjectively aware* of the serious medical need and
> (b) failed adequately to respond."  Conn v. City
> of Reno, 591 F.3d 1081, 1096 (9th Cir. 2010)
> (citing Farmer, 511 U.S. at 828, 114 S. Ct. 1970),
> petition for cert. filed, 78 U.S.L.W. 3670, ---
> U.S. ----, --- S. Ct. ----, --- L. Ed. 2d ----
> (2010).[7]

---

[7] Since the filing of the 2010 Summary Judgment Order, the
United States Supreme Court granted the petition for writ of
certiorari and vacated the judgment in Conn, 591 F.3d 1081.  The
Supreme Court remanded the case for further consideration in
light of Connick v. Thompson, 131 S. Ct. 1350 (2011).  City of
Reno v. Conn, 131 S. Ct. 1812 (2011).  With some exceptions, the
Ninth Circuit on remand reinstated its prior opinion, including
the portion of the opinion quoted in the 2010 Summary Judgment
Order.  Conn v. City of Reno, 658 F.3d 897 (9th Cir. 2011).
    This Court notes that district courts within the Ninth
Circuit still cite Farmer, 511 U.S. at 828, or Simmons, 609 F.3d
at 1017-18, for the subjective awareness and failure to
adequately respond analysis.  See, e.g., Smith v. Solano Cnty.,
No. 2:11-cv-00142 MCE EFB P, 2012 WL 3727332, at *4 (E.D. Cal.
Aug. 24, 2012); Adams v. Albertson, No. C 10-04787 WHA, 2012 WL
440465, at *8 (N.D. Cal. Feb. 12, 2012); Gonzalez v. Henderson
                                              (continued...)

760 F. Supp. 2d at 988-89 (quoting Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017-18 (9th Cir. 2010) (emphasis in original)).  A final judgment that Defendants Melchor, Bhalang, and Bradley, in their official capacities, were negligent would require a finding as to the § 1983 claim that they failed to adequately respond to Plaintiff's medical need.  Thus, the issue would be limited to their subjective awareness of the seriousness of Plaintiff's medical need.

Third, this Court cannot say that it is clear how the ICA will decide the issues in the State Action appeal.  Thus, if this Court looks to the Pullman abstention doctrine as a guide, the applicable factors weigh in favor of a stay in the instant case.  In addition, proceeding to trial immediately in this case would effectively allow the Remaining Defendants to seek review of the state court's rulings in the State Action.  As this district court noted in Tejada,

> Staying this action is also consistent with the Rooker-Feldman doctrine, which generally prevents this court from exercising appellate jurisdiction over state-court decisions.  D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16 (1923).  The Rooker-Feldman doctrine states that:
>
> > a losing party in state court is barred from seeking what in substance would be appellate

---

[7](...continued)
Det. Ctr., No. 2:11-cv-00789-RLH-CWH, 2011 WL 4834461, at *2 (D. Nev. Oct. 12, 2011).

> review of the state judgment in a United
> States District Court, based on the losing
> party's claim that the state judgment itself
> violates the loser's federal rights.
>
> Bennett v. Yoshina, 140 F.3d 1218, 1223 (9th Cir.
> 1998) (quoting Johnson v. DeGrandy, 512 U.S. 997,
> 1005–06 (1994)).  If the court stays this action,
> allowing Hawaii's appellate courts to decide any
> appeal of the state-trial court's decision, this
> court cannot be said to be acting as an appellate
> court over the state-court decision.

2011 WL 3240276, at *5.  Similarly, this Court should not allow
the Remaining Defendants to re-try or otherwise seek review of
the rulings in the State Action.  The Remaining Defendants should
be limited to one review, that of the Hawai`i appellate courts.

Finally, the Court recognizes that Plaintiff and the
general public have a strong interest in the expeditious
resolution of this case.  The Court also understands Plaintiff's
frustration with the fact that this is the second defense request
for a stay in the instant case.  The interests in the expeditious
resolution of the case, however, do not outweigh the
considerations of judicial economy and the administration of
justice discussed *supra*.  In addition, Plaintiff arguably could
have avoided this situation by dismissing this action when she
filed the State Action and bringing all of her claims in the
State Action.  Plaintiff emphasizes that, although the state
court could have heard her § 1983 claims, she had a right to
bring her federal claims in federal court.  This is true.
Plaintiff, however, must also accept the consequences of her

36

decision to bring some of her claims in federal court and some of
her claims in state court.

Having carefully considered all of the relevant
factors, this Court, in the exercise of its discretion, FINDS
that a stay is appropriate in the instant case.

## CONCLUSION

On the basis of the foregoing, the Remaining
Defendants' Motion for Summary Judgment, filed June 8, 2012, is
HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion for
Summary Judgment is GRANTED as to: 1) the portion of Plaintiff's
negligence claim alleging that Defendants Marks and Wakabayashi,
in their individual capacities, were negligent in training,
supervising, and retaining Defendants Melchor, Bhalang, Bradley,
and Yasunaga; 2) the portion of Plaintiff's negligence claim
alleging an NIED claim based on negligent training, supervision,
and retention by Defendants Marks and Wakabayashi, in their
individual capacities; and 3) the portions of Plaintiff's § 1983
claim and IIED claim based on the training, supervision, and
retention by Defendants Marks and Wakabayashi.  The Remaining
Defendants' Motion for Summary Judgment is DENIED WITHOUT
PREJUDICE in all other respects.

Further, the Remaining Defendants' Motion for Stay of
Action, also filed June 8, 2012, is HEREBY GRANTED.  The Court
HEREBY STAYS the instant case pending the resolution of the

appeal in the State Action, <u>Leah Castro, et al. v. Leroy Melchor, et al.</u>, Civil No. 08-1-0901-05 KTN.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 14, 2012.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**LEAH CASTRO, ET AL. V. LEROY MELCHOR, ET AL; CIVIL NO. 07-00558 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART THE REMAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING THE REMAINING DEFENDANTS' MOTION FOR STAY OF ACTION**